UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SHAVON WALKER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Case No. 24-cv-2341 (RJL) |
| ) | |
| **DISTRICT OF COLUMBIA,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

September 10th, 2024 [Dkt. #2]

On August 12, 2024, plaintiff Shavon Walker brought this suit against the District of Columbia ("the District"), alleging the District, through the District of Columbia Public Schools ("DCPS"), engaged in prohibited discrimination and retaliation in violation of the Americans with Disabilities Act of 1990 ("ADA"). *See* Compl. [Dkt. #1]. Plaintiff also filed a Charge of Discrimination in the U.S. Equal Employment Opportunity Commission ("EEOC"). *See* Compl. ¶ 8.

At the core of plaintiff's case is her reassignment from teaching special education students in Grades 6–8 to teaching special education students in Grades K–2. Plaintiff alleges she cannot physically perform the tasks associated with teaching Grades K–2 because of her disability—uterine fibroids—and that this reassignment constitutes retaliation against her previous requests for accommodation and advocacy on behalf of disabled students. *See* Compl. Shortly before plaintiff was to begin teaching Grades K–2, she moved for a preliminary injunction ordering DCPS to retain her in her position teaching

1

Grades 6–8 pending the outcome of the EEOC complaint. *See* Pl.'s Mot. for TRO & Prelim. Inj. ("Pl.'s Mot.") [Dkt. #2].

Because plaintiff has failed to show a likelihood of irreparable harm, a likelihood of success on the merits, or that the balance of the equities and the public interest warrant issuing a preliminary injunction, plaintiff's motion for a preliminary injunction is **DENIED**.

I.   **BACKGROUND**

    a. Factual Background

The factual record before me is rather thin, given the early stage of this case and because, as of oral argument, plaintiff had worked only one day as a Grades K–2 teacher. *See* Rough Tr. of Aug. 28, 2024 Oral Arg. ("Tr.") 4:14–5:22.

Plaintiff is a DCPS special education teacher at School Without Walls at Francis-Stevens ("SWWFS" or "the school"). Pl.'s Mot. 1. Last year she taught Grades 6–8, but in June 2024[1] the school principal Shanna Young informed plaintiff that she had been reassigned to teach Grades K–2 for the upcoming school year. Pl.'s Mot. 1–2.

Plaintiff believes teaching Grades K–2 will be more physically demanding and she will not be able to perform the job because of her uterine fibroids, which cause extreme fatigue, shortness of breath, tachycardia, confusion, and weakness, and limit her ability to lift objects, bend over, and stand for long periods of time. Pl.'s Mot. 1–2, 6–9, 13; Walker

---

[1] The parties dispute the specific date. Plaintiff alleges the principal informed her of the decision on June 10, 2024. Pl.'s Mot. Ex. A ("Walker Aff.") [Dkt. #2-1] ¶ 23. Defendant claims the principal informed plaintiff on June 6, 2024. Def.'s Opp'n to Pl.'s Mot. for a Prelim. Inj. Ex. 1 ("Young Aff.") [Dkt. #8-1] ¶ 14. The specific date is not dispositive here.

Aff. ¶¶ 17, 25. She asserts that teaching special education students in Grades K–2 will involve more lifting, bending, and other physical interaction with students and will therefore exacerbate the symptoms of her uterine fibroids. Pl.'s Mot. 9–10; Walker Aff. ¶ 25; Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. for Prelim. Inj. Ex. 1 ("Second Walker Aff.") [Dkt. #9-1] ¶ 16. In plaintiff's view, the reassignment is an act of retaliation against her previous requests for reasonable accommodation and her advocacy on behalf of disabled students.[2] Pl.'s Mot. 16–19.

Defendant paints a very different picture: plaintiff was reassigned due to operational needs—namely, plaintiff's failure to create individualized education programs ("IEPs") for students in a timely manner, her difficulties working productively with other teachers, and other performance-related issues. *See* Def.'s Opp'n to Pl.'s Mot. for Prelim. Inj. ("Def.'s Opp'n") [Dkt. #8] 3–4. Teaching Grades K–2 will also be less physically demanding than teaching Grades 6–8. Def.'s Opp'n 5–6. Unlike the Grades 6–8 classroom, the Grades K–2 classroom is "self-contained," which means plaintiff will not need to transition students between classrooms, restrooms, the lunch room, or other areas of the school. Def.'s Opp'n 5–6. The Grades K–2 classroom will also have two dedicated aides to assist plaintiff with lifting, bending, and other physical tasks. Def.'s Opp'n 6.

---

[2] Specifically, plaintiff claims the reassignment is retaliation for her (1) May 2024 requests to take breaks to address the symptoms of her uterine fibroids, for the assistance of a female co-worker, for flexibility to miss meetings, and for the right to use an elevator; and (2) requests throughout the 2023-2024 school year for better air conditioning and a larger classroom to accommodate her disabled students. Pl.'s Mot. 1–4.

3

b. Procedural History

Plaintiff filed suit on August 12, 2024. Compl. On the same day, plaintiff filed a motion for a temporary restraining order and a preliminary injunction. Pl.'s Mot. Following oral argument on August 15, 2024, I denied the motion for a temporary restraining order and instructed the parties to complete briefing on the preliminary injunction by August 26, 2024. I held oral argument on the motion for a preliminary injunction on August 28, 2024.

II. **LEGAL STANDARD**

"[A] preliminary injunction is an extraordinary remedy that 'may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Trump v. Thompson*, 20 F.4th 10, 31 (D.C. Cir. 2021) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). "The moving party must make a clear showing that four factors, taken together, warrant relief: [1] likely success on the merits, [2] likely irreparable harm in the absence of preliminary relief, [3] a balance of the equities in its favor, and [4] accord with the public interest." *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 321 (D.C. Cir. 2018) (internal quotation marks omitted). "The likelihood of success and irreparability of harm 'are the most critical' factors." *Trump*, 20 F.4th at 31 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

III. **ANALYSIS**

a. Irreparable Harm

Our Circuit has set a high bar for irreparable harm. *See Olu-Cole v. E.L. Haynes Pub. Charter Sch.*, 930 F.3d 519, 529 (D.C. Cir. 2019) ("This court has said time and again

4

that the degree of proof required for irreparable harm is high . . . ." (internal quotation marks omitted)). The movant must make two showings. *First,* "the harm must be certain and great, actual and not theoretical, and so imminen[t] that there is a clear and present need for equitable relief to prevent irreparable harm." *League of Women Voters of the United States v. Newby,* 838 F.3d 1, 7–8 (D.C. Cir. 2016) (alteration in original) (internal quotation marks omitted) (quoting *Chaplaincy of Full Gospel Churches v. England,* 454 F.3d 290, 297 (D.C. Cir. 2006)). *Second,* "the harm must be beyond remediation." *Id.*

Plaintiff asserts two types of irreparable harm: (1) physical pain and injury; and (2) disciplinary action or termination by DCPS should she not report for duty teaching Grades K–2. Pl.'s Mot. 13–14. Addressing each in turn, I find that the record before me does not establish a likelihood of irreparable harm.

First, regarding physical pain and injury, plaintiff has not established the harm will be "certain and great, actual and not theoretical." *See League of Women Voters of the United States,* 838 F.3d at 7–8. Plaintiff points to doctor's notes recommending she remain in her position teaching Grades 6–8 to avoid overexertion and minimize standing, lifting, and bending, which could exacerbate her impairment. Pl.'s Mot. 13; Pl.'s Mot. Ex. A-6 ("June 25, 2024 Doctor's Note") [Dkt. #2-1]; Pl.'s Mot. Ex. A-9 ("July 17, 2024 Doctor's Note") [Dkt. #2-1]. However, these doctor's notes do not explain the likelihood or severity of plaintiff's pain and injury should she teach Grades K–2. *See* June 25, 2024 Doctor's Note; July 17, 2024 Doctor's Note.[3] Plaintiff herself characterizes the potential harm as

---

[3] While the doctor's notes do recommend plaintiff remain in Grades 6–8, these bald recommendations do not merit a preliminary injunction. *See* June 25, 2024 Doctor's Note (recommending plaintiff "remain[]

5

"pain, suffering, physical injury, and health complications of *unknown severity and duration*." Pl.'s Reply to Def.'s Opp'n to Mot. for Prelim. Inj. ("Pl.'s Reply") [Dkt. #9] 8 (emphasis added). This case is therefore unlike those in which courts in this District have previously granted preliminary injunctions when the movant's health was severely and imminently at risk. *See Banks v. Booth*, 468 F. Supp. 3d 101, 123 (D.D.C. 2020) (finding irreparable harm where prison inmates were at risk of contracting COVID-19, an "infectious disease which spreads quickly and fatally in congregate settings, such as [Department of Corrections] facilities"); *Al-Joudi v. Bush*, 406 F. Supp. 2d 13, 20 (D.D.C. 2005) (finding irreparable harm where Guantanamo Bay detainees engaged in a hunger strike were "vulnerable to physical deterioration, and possibly death, by virtue of their custodial status at Guantanamo and weakened physical condition").

Plaintiff also fails to adequately address defendant's arguments that teaching Grades K–2 will *reduce* the physical demands on plaintiff relative to teaching Grades 6–8. *See* Def.'s Opp'n 2, 5–6; Young Aff. ¶¶ 16–17. The Grades K–2 classroom is self-contained, so plaintiff will not need to transition students between restrooms, lunch, and elective courses. Def.'s Opp'n 5–6; Young Aff. ¶¶ 16–17. It is also on the first floor, while the Grades 6–8 classroom is on the third floor. Def.'s Opp'n 5–6; Young Aff. ¶ 16. The Grades K–2 classroom has fewer students and has two dedicated aides who can assist plaintiff with physical tasks, such as lifting and bending. Def.'s Opp'n 6; Young Aff. ¶ 18;

---

in the current age group she is servicing (Grades 6–8)" because "[t]he current age group she is servicing is more independent than the younger so this will help her greatly"); July 17, 2024 Doctor's Note (recommending plaintiff "continue with current role – minimize long standing, lifting, bending").

6

Tr. 5:23–6:11 ("[Plaintiff's counsel]: It is my understanding, [the aides] did help, Your Honor. I don't know specifically what they did versus what Ms. Walker did."). Given these remediating facts, largely unrebutted by plaintiff,[4] plaintiff has not shown the kind of great and imminent harm required for issuing preliminary injunctive relief.

Second, plaintiff argues irreparable harm in that if she does not report to work as a Grades K–2 teacher, she risks disciplinary action and termination. Pl.'s Mot. 14. Plaintiff's claimed harms here are speculative and are not irreparable. Economic loss and employment-based harms are remediable during the normal course of litigation and do not warrant preliminary injunctive relief. *Church v. Biden*, 573 F. Supp. 3d 118, 142 (D.D.C. 2021); *Farris v. Rice*, 453 F. Supp. 2d 76, 79 (D.D.C. 2006) ("[G]iven the court's equitable powers to remedy for loss in employment through, for example, back pay and time in service credit, cases are legion holding that loss of employment does not constitute irreparable injury."). Plaintiff argues that life-changing events resulting from loss of employment—such as inability to make mortgage payments—can constitute irreparable harm. Pl.'s Reply 10–11. Plaintiff, however, offers no evidence that she herself is at risk of such life-changing events. *See* Pl.'s Reply 10–11. Therefore, I do not find irreparable harm here either.

---

[4] At oral argument, plaintiff's counsel asserted that plaintiff experienced leg swelling and exhaustion on her first day of teaching Grades K–2 and urged this Court to view this as evidence of irreparable harm. Tr. 5:14–18, 6:19–7:5. As plaintiff's counsel acknowledged, though, the record does not mention swelling as a possible symptom of uterine fibroids and there is no evidence that the two are connected in this instance. *See* Tr. 8:12–25.

b. Likelihood of Success on the Merits

With respect to this motion for a preliminary injunction, plaintiff asserts two types of claims under the ADA: (1) failure to grant reasonable accommodations in violation of 42 U.S.C. § 12112; and (2) retaliation for requesting reasonable accommodations and for advocacy on behalf of disabled students in violation of 42 U.S.C. § 12203.[5] Compl. The limited record before me does not establish that she is likely to succeed on either type of claim.

*Failure to Accommodate*. To prevail on a failure to accommodate claim, a plaintiff must show "(1) that he or she has a disability under the ADA; (2) that the employer had notice of the disability; (3) that the plaintiff could perform the essential functions of the position either with reasonable accommodation or without it; and (4) that the employer refused to make the accommodation." *Hill v. Assocs. for Renewal in Educ.*, 897 F.3d 232, 237 (D.C. Cir. 2018).

Plaintiff alleges defendant failed to grant reasonable accommodations in response to two requests. First, she sought schedule modifications, elevator access, and other accommodations; those requests were largely granted on July 22, 2024. *See* Def.'s Opp'n 13; Def.'s Opp'n Ex. 3 [Dkt. #8-3] (letter from DCPS to plaintiff granting accommodations

---

[5] Plaintiff's complaint also asserts a hostile work environment claim under 42 U.S.C. § 12112. *See* Compl. ¶¶ 72–85. However, plaintiff's motion for a preliminary injunction does not address this hostile work environment claim. Defendant's opposition brief argues that plaintiff is not likely to succeed on the merits with respect to this claim, *see* Def.'s Opp'n 16–18, but plaintiff failed to counter these arguments—or even mention the hostile work environment claim—on reply. At oral argument, plaintiff's counsel only referred to her two "principle" claims—retaliation and failure to accommodate. *See* Tr. 16:18–21. Therefore, plaintiff has conceded the hostile work environment claim as it relates to this motion for a preliminary injunction. *See Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) ("A party forfeits an argument by failing to raise it in his opening brief.").

including permission to take additional breaks during the school day, receive communications via email instead of text messages, miss impromptu meetings, and use the elevator).

Second, and more hotly disputed, is plaintiff's request to remain in her position teaching Grades 6–8. Plaintiff argues that this request was denied in violation of the ADA; defendant counters that working with Grades K–2 will accommodate plaintiff's medical needs and that the interactive accommodation process is ongoing. At this stage of the case, defendant has the stronger argument.

The ADA entitles an individual with a disability to a reasonable accommodation, not her preferred accommodation. *See Leiterman v. Johnson*, 60 F. Supp. 3d 166, 182 (D.D.C. 2014) ("[A]n employer is not required to provide an employee that accommodation he requests or prefers, the employer need only provide some reasonable accommodation." (quoting *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1305 (D.C. Cir. 1998))); *Pantazes v. Jackson*, 366 F. Supp. 2d 57, 69 (D.D.C. 2005). Defendants have made a sufficient showing that working with Grades K–2 in a self-contained classroom with two aides may limit plaintiff's bending, lifting, standing, and other activities which could exacerbate her uterine fibroids symptoms. Plaintiff may prefer to stay in her previous role teaching Grades 6–8, but she has not at this stage shown that working with Grades K–2 will not accommodate her medical needs.[6] The record may well develop in such a way

---

[6] Plaintiff relies heavily on her affidavits and doctor's notes. Plaintiff admits she has never taught special education students in Grades K–2 before, so her statements about the requirements of working with Grades K–2 students are assumptions. *See* Second Walker Aff. ¶ 2 ("I have some limited experience teaching upper elementary school but I have never before taught Grades K–2."). Additionally, the

9

that working in Grades K–2 is not a reasonable accommodation for plaintiff, but that is not apparent on the facts before me today.

It also appears that the interactive process is ongoing. DCPS and plaintiff are exchanging emails regarding her request[7] and, while DCPS has declined to give plaintiff her preferred accommodation, it has offered alternatives—such as an ergonomic high chair—to try to address plaintiff's concerns. *See* Def.'s Opp'n Ex. 2.

*Retaliation*. To establish retaliation in violation of the ADA, a plaintiff needs to show (1) she engaged in protected activity; (2) she was subjected to adverse action by the employer; and (3) there existed a causal link between the adverse action and the protected activity. *See Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005).

Here, it is not clear plaintiff will be able to show the requisite causal link. Defendant points to the school's operational needs, outlined in an affidavit from the school's principal, to show the reassignment was not retaliation and was instead to manage plaintiff's performance deficiencies. *See* Young Aff. ¶¶ 12–15. The principal's affidavit states she made the decision to reassign plaintiff in late May and it was "unrelated" to her requests for reasonable accommodation. Young Aff. ¶¶ 12–15. Moreover, the school principal and the DCPS ADA team are separate and operate independently; the DCPS ADA team handles requests for accommodation and the school principal handles administrative decisions. Tr.

---

doctor's notes do not address the specifics of teaching Grades K–2. *See* June 25, 2024 Doctor's Note; July 17, 2024 Doctor's Note.

[7] I note that DCPS did not respond to plaintiff's July 26, 2024 email until August 16, 2024, shortly after I heard oral argument on the motion for a temporary restraining order. *See* Def.'s Opp'n Ex. 2 [Dkt. #8-2]. I urge DCPS to be expeditious throughout this interactive process in the hopes that the parties can resolve this matter.

24:19–25:11. Although plaintiff claims the school principal knew about her requests for accommodation, she provides no support for that assertion. *See* Pl.'s Mot. 9; Walker Aff. ¶ 27.

Given the limited record and disputed nature of the facts before me, plaintiff has not made the required clear showing that she is likely to succeed in establishing retaliation.

### c. Balance of the Equities and Public Interest

The "balance of the equities" and "public interest" factors merge when the Government is the party opposing the preliminary injunction. *Nken*, 556 U.S. at 435. Here, I find that the balance of the equities and the public interest weigh against granting a preliminary injunction.

Plaintiff asserts there is a strong public interest in protecting individuals with disabilities from discrimination. Pl.'s Mot. 20. I agree. However, on the record before me, this is at bottom an employment dispute. The public interest and balance of the equities weigh against this Court sitting as a "super-personnel department" reexamining a school principal's administrative and operational decisions, and I decline to do so here. *See Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1114 (D.C. Cir. 2016) ("This Court does not sit as a 'super-personnel department' that reexamines an employer's business decisions . . . and 'may not second-guess an employer's personnel decision absent demonstrably discriminatory motive.'") (citations omitted); *see also Jordan v. Evans*, 355 F. Supp. 2d 72, 77 (D.D.C. 2004) (weighing "the well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs" and "the unwillingness of courts to grant equitable relief in employment cases" in denying

a preliminary injunction (internal quotation marks omitted)). The District's interest in managing its own personnel affairs therefore tips the balance of the equities and public interest factors in defendant's favor.

## IV.   CONCLUSION

For the foregoing reasons, plaintiff's motion for a preliminary injunction is **DENIED**. A separate order consistent with this decision accompanies this Memorandum Opinion.

*[signature]*
RICHARD J. LEON
United States District Judge